In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 22-1407

COUNTY OF COOK, ILLINOIS,

*Plaintiff-Appellant*,

*v.*

BANK OF AMERICA CORPORATION, *et al.*,

*Defendants-Appellees*.

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14 C 2280 — **Elaine E. Bucklo**, *Judge*.

———————————

ARGUED OCTOBER 27, 2022 — DECIDED AUGUST 16, 2023

———————————

Before EASTERBROOK, RIPPLE, and WOOD, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Cook County contends that a number of banks operating in northern Illinois made credit too readily available to some borrowers, who defaulted, and then foreclosed on the loans in a way that injured the County. It filed this suit in 2014 under the Fair Housing Act, 42 U.S.C. §§ 3601–19 (FHA or the Act).

According to the County, the banks targeted potential minority borrowers for:

> (a) unchecked or improper credit approval decisions … , which allowed [them] to receive home loans they could not afford; (b) discretionary application of surcharges … of additional points, fees, and other credit and servicing costs over and above an otherwise objective risk-based financing rate for such loan products; (c) … higher cost loan products; and (d) undisclosed inflation of appraisal values … to support inflated loan amounts … .

584 F. Supp. 3d 562, 565 (N.D. Ill. 2022) (summarizing the complaint). When many of the borrowers could not repay, the County asserts, it had to deal (at its own expense) with vacant properties, and it lost tax revenue and transfer fees. The County maintains that the Act entitles it to recompense.

The sort of claim that Cook County advances is not novel. A similar claim reached the Supreme Court in 2017, and the Justices held that the Act provides relief only for injury proximately caused by a statutory violation. *Bank of America Corp. v. Miami*, 581 U.S. 189 (2017). The Court stated that "foreseeability alone is not sufficient to establish proximate cause under the FHA" (*id*. at 201), because

> foreseeability alone does not ensure the close connection that proximate cause requires. The housing market is interconnected with economic and social life. A violation of the FHA may, therefore, "be expected to cause ripples of harm to flow" far beyond the defendant's misconduct. Nothing in the statute suggests that Congress intended to provide a remedy wherever those ripples travel. And entertaining suits to recover damages for any foreseeable result of an FHA violation would risk "massive and complex damages litigation."

> Rather, proximate cause under the FHA requires "some direct relation between the injury asserted and the injurious conduct alleged." … [W]e have repeatedly applied directness principles to

statutes with "common-law foundations." "The general tendency" in these cases, "in regard to damages at least, is not to go beyond the first step."

*Id*. at 202–03 (cleaned up). The Court relied for this conclusion on decisions under both the antitrust laws and RICO. See, e.g., *Associated General Contractors of California, Inc. v. Carpenters Union*, 459 U.S. 519, 534 (1983); *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992); *Hemi Group, LLC v. New York*, 559 U.S. 1, 10 (2010).

Cook County seeks a remedy for effects that extend *way* beyond "the first step." The directly injured parties are the borrowers, who lost both housing and money. The banks are secondary losers, for they did not collect the interest payments that the borrowers promised to make and often did not recover even the principal of the loans in foreclosure sales. The County is at best a tertiary loser; its injury derives from the injuries to the borrowers and banks.

The district court granted summary judgment to the defendants, relying in large part on *Miami*. 584 F. Supp. 3d 562 (N.D. Ill. 2022). The district court also relied on *Oakland v. Wells Fargo & Co.*, 14 F.4th 1030 (9th Cir. 2021) (en banc), in which a unanimous court held that *Miami* forecloses relief in a suit similar to Cook County's.

The County argues on appeal that the remedy need *not* stop with "the first step", because the banks engaged in an "integrated equity-stripping scheme" (the County's words). The County finds support for this exception to *Miami* in the Eleventh Circuit's decision on remand in *Miami* itself. *Miami v. Wells Fargo & Co.*, 923 F.3d 1260 (11th Cir. 2019). But the Supreme Court vacated that decision as moot, *Wells Fargo & Co.*

*v. Miami*, 140 S. Ct. 1259 (2020), which strips it of any value as precedent.

As an original matter, the need to address a "scheme" that entails multiple steps and multiple remote injured parties is a reason to apply the Supreme Court's analysis in *Miami*, not to avoid it. One phrase—whether it be "integrated equity-stripping scheme" here or "tax avoidance" in *Hemi Group*—may comprise multiple steps and many layers of injury. That a single phrase can be devised does not justify suit by remotely injured parties.

The district court added that the summary-judgment record would not allow a jury to find that any "integrated equity-stripping scheme" existed. 584 F. Supp. 3d at 568–70. The record shows instead that individual banks developed their own programs, at different times, for their own reasons. The district judge observed that the County's expert conceded that an "integrated equity-stripping scheme" would not have made economic sense for the banks, which would have been among the major losers from inability to recoup their investments. *Id*. at 569.

The district judge wrote a long opinion covering these and many more issues. The parties' appellate briefs have tried to address almost all of these potential issues, so they are even longer than the district court's opinion. But none of the additional grounds of debate matters to the outcome, once we conclude (as we have) that the right plaintiffs are those who suffer the first-tier injuries. Anything more that might be said—such as the fact that a long causal chain poses administrative problems beyond a federal judge's skills—*was* said by the Ninth Circuit in *Oakland*; repetition would be otiose.

AFFIRMED

RIPPLE, *Circuit Judge*, concurring. I join the judgment of the court. I write separately because I would affirm the judgment on different grounds.

Cook County sued the defendants (the "banks") under the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*, alleging that the banks targeted African American and Hispanic home buyers in Cook County for predatory mortgages and other loan products. The County alleged three counts: a disparate-impact claim alleging an "equity stripping scheme" based on facially neutral loan origination, servicing and foreclosure policies and practices (Count I); a disparate-impact claim based on "facially neutral mortgage servicing and foreclosure practices" (Count II); and a disparate-treatment claim based on the banks' "discriminatory equity stripping scheme" (Count III).[1] The County alleged that, as a result of the banks' predatory loan practices, it had suffered various harms, including lower property-tax values for homes in the County, the cost of providing municipal services to abandoned and vacant properties, and the cost of processing an increased number of foreclosures.

The district court granted in part a motion to dismiss filed by the banks. The court concluded that the County's alleged property-tax and municipal-services damages were not proximately caused by the banks' alleged discrimination under *Bank of America Corp. v. City of Miami*, 581 U.S. 189 (2017). The court allowed the County to proceed on the basis of the out-of-pocket costs the County claimed to have incurred in administering and processing the foreclosures. The district court then excluded the expert testimony of two of the County's

---

[1] R.177 at 133, 141, 145.

expert witnesses—Dr. Gary Lacefield and Dr. Charles Cowan—under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993) and granted summary judgment for the banks.

The majority opinion, relying on *City of Miami*, concludes that the FHA does not provide relief for Cook County because the County did not suffer "first-tier injuries." In *City of Miami*, the Supreme Court considered Miami's claims that the discriminatory lending practices of Bank of America and Wells Fargo violated the FHA. The Court held that, "to establish proximate cause under the FHA, a plaintiff must do more than show that its injuries foreseeably flowed from the alleged statutory violation"; "proximate cause under the FHA requires 'some direct relation between the injury asserted and the injurious conduct alleged.'" *Id.* at 1301, 1306 (quoting *Holmes v. Securities Investor Protection Corporation*, 503 U.S. 258, 268 (1992)). The Court explained that it has "repeatedly applied directness principles to statutes with 'common-law foundations,'" and "[t]he general tendency in these cases, in regard to damages at least, is not to go beyond the first step." *Id.* at 1306 (cleaned up) (quoting *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006); *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 10 (2010)). "What falls within that 'first step' depends in part on the 'nature of the statutory cause of action,' and an assessment 'of what is administratively possible and convenient.'" *Id.* (citation omitted) (quoting *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014); *Holmes*, 503 U.S. at 268). The Court declined "to draw the precise boundaries of proximate cause under the FHA" or "to determine on which side of the line" Miami's alleged financial injuries (diminished property-tax revenue and increased demand for municipal services) fell. *See id.*

The Ninth and Eleventh Circuits have reached inconsistent conclusions regarding whether, under the FHA, banks' discriminatory loan practices can proximately cause injuries such as those alleged by Cook County. In *City of Oakland v. Wells Fargo & Co.*, 14 F.4th 1030 (9th Cir. 2021) (en banc), the Ninth Circuit sitting en banc held that Oakland's reduced tax revenue and increased municipal expenditures were downstream "ripples of harm" that were too attenuated and traveled "too far beyond" Wells Fargo's alleged discriminatory lending practices to establish proximate cause under the FHA. In *City of Miami v. Wells Fargo & Co.*, 923 F.3d 1260 (11th Cir. 2019), which the Supreme Court vacated as moot because Miami voluntarily dismissed the lawsuit while a petition for writ of certiorari was pending, the Eleventh Circuit concluded that, at the motion to dismiss stage, Miami had adequately pled proximate cause under the FHA in relation to the injury to its tax base but not in relation to an increase in expenditures on municipal services.

In my view, prudence counsels against reaching the question of proximate causation under the FHA in this case. Instead, I would affirm the judgment of the district court on evidentiary grounds.

The County's claims rely in large part on the expert testimony of Drs. Lacefield and Cowan, which the district court excluded as unreliable. "We review de novo whether a district judge has followed Rule 702 and *Daubert*." *Kirk v. Clark Equipment Co.*, 991 F.3d 865, 872 (7th Cir. 2021) (quoting *Haley v. Kolbe & Kolbe Millwork Co.*, 863 F.3d 600, 611 (7th Cir. 2017)). "If the court correctly applied the Rule 702/*Daubert* framework, we review [its] decision to admit or exclude expert testimony for abuse of discretion." *Id.* (internal quotation marks

omitted). "Under that standard, [s]o long as the district court adhered to *Daubert*'s requirements, we shall not disturb the district court's findings unless they are manifestly erroneous." *Id.* (internal quotation marks omitted) (quoting *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 607–08 (7th Cir. 2006)).

The district court correctly applied the *Daubert* analysis and did not abuse its discretion in excluding the testimony of Drs. Lacefield and Cowan. Dr. Lacefield asserted that he could discern whether loans were discriminatory by looking at the loan data for various "delimiters," or lending and servicing characteristics, and comparing the relative presence of those "delimiters" in the population of white borrowers as compared to African American and Hispanic borrowers. After a thorough evaluation of the expert materials, the court concluded that Dr. Lacefield's methodology not only was "untested and unheard-of by others in his field" but also was "substantively unsound."[2] The court also excluded the testimony of Dr. Cowan about the banks' disproportionate foreclosure rates on minority borrowers and the banks' disproportionate issuance of higher-risk loans, and loans with higher annual percentage rates, to minority borrowers and in neighborhoods with a high concentration of minority residents. The court concluded that Dr. Cowan's methodology, analyzing loan data aggregated across multiple lenders, products, and decades, was unreliable. The district court acted within its discretion in excluding the expert testimony of Drs. Lacefield and Cowan.

Without the expert testimony of Drs. Lacefield and Cowan, the County has no basis for its two disparate-impact

---

[2] R.664 at 33.

claims. In *Texas Department of Housing and Community Affairs v. Inclusive Communities Project*, 576 U.S. 519, 542, 545–46 (2015), the Supreme Court held that disparate-impact claims are cognizable under the FHA but explained that "a disparate-impact claim that relies on a statistical disparity must fail if the plaintiff cannot point to a defendant's policy or policies causing that disparity." "A robust causality requirement," continued the Court, "ensures that '[r]acial imbalance … does not, without more, establish a prima facie case of disparate impact' and thus protects defendants from being held liable for racial disparities they did not create." *Id.* at 542 (quoting *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 653 (1989)). Because the County sought to prove its disparate-impact claims using the statistical analyses of Drs. Lacefield and Cowan, the County's disparate-impact claims must fail once that testimony is excluded.

That leaves only Count III, the County's disparate-treatment claim based on the alleged existence of an integrated scheme to strip equity from minority borrowers. As the district court explained, the record does not support the County's suggestion that the defendants engaged in a coordinate scheme to target minority borrowers for loans that they could not afford in order to provoke defaults and foreclosures. Indeed, Dr. Lacefield, the County's expert, admitted that such a scheme would "not make economic sense."[3] Count III therefore also fails.

Resolving this case on the evidentiary issues in this way would allow further percolation on the important, and yet

---

[3] R.573-15 at 15.

undecided, question of the nature of the proximate cause analysis under the FHA.